IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION

**FILED**

DEC 13 2018

Clerk, U.S. Courts
District Of Montana
Missoula Division

ROBERT MYERS,

Plaintiff,

vs.

SHAUN R. THOMPSON (in his
personal capacity), JON G. MOOG (in
his personal capacity), MITCHELL D.
HILL (in his personal capacity),
JEFFREY H. LANGTON, HEATHER
L. McGUYER (a/k/a/ Heather L.
Portner and Heather Warila Pornter),
AMY SCOTT SMITH, and DOES 1-
10,

Defendants.

CV 17–157–M–DLC–JCL

ORDER

Before the Court are: Defendant Judge Jeffrey Langton's ("Judge Langton")

Motion to Dismiss and Motion for Summary Judgment (Docs. 20; 23); the Motion

for Summary Judgment by Defendants Shaun Thompson ("Thompson"), Jon Moog

("Moog"), Mitchell Hill ("Hill"), Heather McGuyer ("McGuyer"), and Amy Scott

Smith ("Smith"), collectively "the ODC Defendants" (Doc. 25); Magistrate Judge

Lynch's Findings and Recommendation (Doc. 43), recommending that Judge

Langton's Motion to Dismiss be denied and that the Motions for Summary

Judgment be granted; Plaintiff Robert Myers' ("Myers") Objections to Findings

1

and Recommendations (Doc. 44) and Defendants' reply briefs. (Docs. 45; 46). For the following reasons, the Court adopts the Findings and Recommendation in full.

## FACTUAL BACKGROUND[1]

In 2013, Myers represented Daniel Cox in a family law matter over which Judge Langton presided as a district judge. Based on Myers' conduct during the *Cox* proceedings, Judge Langton imposed sanctions on Myers, which the Montana Supreme Court affirmed on appeal. *See In re Marriage of Cox*, 353 P.3d 506 (table), 2015 WL 2447230 (Mont. 2015). Myers subsequently opposed Judge Langton in his 2016 reelection bid for district court judge in Ravalli County. Throughout his campaign, Myers launched a series of attacks on Judge Langton, including a radio advertisement in which Daniel Cox accused Judge Langton of fraud and corruption, as well as campaign mailers, statements to newspapers, and radio jingles accusing Judge Langton of engaging in illegal drug activities and sexual impropriety. In response, Judge Langton published a campaign advertisement refuting Myers' allegations. Judge Langton won reelection.

Due to Myers' conduct in the *Cox* matter and 2016 judicial campaign, the Office of Disciplinary Counsel ("ODC") prosecuted three separate complaints against him before the Montana Commission on Practice ("Commission"). The

---

[1] Because the facts of this case have been set forth in detail in Judge Lynch's Findings and Recommendation, the Court will restate only those facts integral to the analysis in this Order.

2

first complaint stemmed from Myers' professional misconduct in the *Cox* matter. The Commission concluded his behavior was "outrageous, continuous, and display[ed] a disturbing lack of judgment and disrespect for the judiciary, opposing counsel, opposing parties, and the rule of law as a whole[,]" (Doc. 22-7 at 6) and recommended that Myers be suspended from the practice of law. The second ODC complaint stemmed from Myers' campaign advertisements criticizing Judge Langton's judicial conduct in the *Cox* matter. The Commission concluded that Myers made statements "he knew to be false, or were made or caused to be made with reckless disregard for the truth, concerning the integrity of a judge[,]" (Doc. 22-11 at 4) and recommended suspension once again. In its third and final complaint, the ODC alleged that Myers violated the Rules of Professional Conduct and Code of Judicial Conduct by running advertisements during the judicial campaign accusing Judge Langton of reprehensible acts such as buying methamphetamine from a 13-year-old child. (Doc. 22-20 at 1–4.) In relation to the final complaint, the Commission recommended that Myers be disbarred.

On December 28, 2017, the Montana Supreme Court adopted the Commissions' findings of facts, conclusions of law, and recommendations in all three ODC matters. The Court imposed periods of suspension for the first two complaints, and for the third complaint, disbarred Myers from the practice of law.

3

(Doc. 22-9 at 2 (Mont. Sup. Ct., PR 16-0245 (2017))); (Doc. 22-15 at 2 (Mont. Sup. Ct., PR 16-0411 (2017))); (Doc. 22-22 at 2 (Mont. Sup. Ct., PR 17-0026 (2017))).

## PROCEDURAL BACKGROUND

### I. The Complaint

Myers filed his First Amended Complaint (the "Complaint") (Doc. 5) in this matter on February 2, 2018, alleging six counts. Counts I and II allege that that the ODC Defendants[2] conspired to deliberately fabricate evidence to use during the ODC's prosecution of Myers. According to Myers, Defendants presented the fabricated evidence to the Commission to establish Myers violated provisions of the Montana Rules of Professional Conduct and the Code of Judicial Conduct, resulting in his suspension from the practice of law.

Count III alleges that Thompson, Moog, Hill, McGuyer, and Judge Langton retaliated against Myers for exercising his free speech rights by publishing advertisements about Judge Langton, in violation of the First Amendment.

Count IV, mislabeled "Count III," alleges Judge Langton is liable for defamation and defamation per se for publishing "false and unprivileged

---

[2] These defendants were involved with the ODC's prosecution of Myers. Shaun Thompson served as Chief Disciplinary Counsel, Jon Moog served as Deputy Disciplinary Counsel, and Mitchell Hill served as an investigator, all with the ODC. Heather McGuyer and Amy Scott Smith were witnesses used to corroborate the ODC complaints and prosecutions.

4

statements" about Myers in his own judicial campaign advertisements, damaging Myers' professional reputation.

In Count V, mislabeled "Count IV," Myers alleges Judge Langton filed a criminal defamation complaint against Myers to prevent Myers from further investigating Judge Langton's misconduct. Myers alleges this conduct constitutes an abuse of process.

Count VI, mislabeled "Count V," alleges Moog conspired with Judge Langton, McGuyer, and Smith to deceive the Montana Commission on Practice by presenting fabricated evidence or testimony during the ODC's prosecution of Myers.

Myers requests relief in the form of compensatory and punitive damages. He also seeks treble damages for his claim of "attorney deceit" set forth in Count VI.

## II.    Pending Motions

Judge Langton filed a Motion to Dismiss on April 3, 2018 and a Motion for Summary Judgment and supporting brief (Docs. 20; 23) the following day. Defendants Hill, McGuyer, Moog, Smith, and Thompson, collectively "ODC Defendants," filed a Motion for Summary Judgement (Doc. 25) on April 5, 2018. The record reflects that Myers twice requested an extension to file his response to Defendants' pending motions. Judge Lynch granted both of Myers' requests, and

both times, Myers failed to respond. Thereafter, on July 18, 2018, Judge Lynch

entered his Findings and Recommendation (Doc. 43), recommending that

Defendants' Motions for Summary Judgment be granted. Judge Lynch also

recommended that Judge Langton's Motion to Dismiss be denied. Myers filed his

Objections to Findings and Recommendations (Doc. 44) on August 1, 2018. Judge

Langton filed his reply (Doc. 45) on August 13, 2018, and ODC Defendants filed

their reply (Doc. 46) the following day.[3]

This Court must review de novo those findings and recommendations to

which Myers has specifically objected. 28 U.S.C. § 636(b)(1)(C). Absent

objection, this Court reviews findings and recommendations for clear error. *United

States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003) (en banc); *Thomas v.

Arn*, 474 U.S. 140, 149 (1985). Clear error exists if the Court is left with a

---

[3] Responding to Myers' Objections, Defendants point out that Myers' noncompliance with this
Court's Local Rules provides an independent basis upon which this case could be resolved.
(Docs. 45 at 7–8; 46 at 3.) Myers failed to timely respond to Defendants' summary judgment
briefing as required by L.R. 7.1(d)(1)(B) and to properly object to Judge Lynch's Findings and
Recommendation pursuant to L.R. 72.3, which requires the objecting party to itemize the factual
findings objected to and identify the record evidence relied upon to contradict those findings.
Defendants are correct; this case could be dismissed on noncompliance grounds. *See Ghazali v.
Moran*, 46 F.3d 52, 53 (9th Cir. 1995) ("Failure to follow a district court's local rules is a proper
ground for dismissal."). However, before dismissing an action for noncompliance with a court's
local rules, "the district court is required to weigh several factors." *Id.* Here, Myers' pattern of
noncompliance manifested both before and after Judge Lynch issued his Findings and
Recommendation. Nonetheless, Judge Lynch overlooked Myers' most egregious
noncompliance—the failure to respond to motions for summary judgment—and addressed those
motions on their merits. This Court is convinced that reviewing Judge Lynch's merits-based
recommendations is preferable to undertaking the analysis necessary to dismiss Myers' case for
noncompliance, particularly when the result is the same and Myers has now presented his
arguments against summary judgment.

6

"definite and firm conviction that a mistake has been committed." *United States v. Syrax*, 235 F.3d 422, 427 (9th Cir. 2000) (citations omitted).

## DISCUSSION

### I.    Judge Langton's Motion to Dismiss

In his Motion to Dismiss, Judge Langton argued that this Court lacks jurisdiction over Counts I, II, III, and VI based on the *Rooker-Feldman* doctrine. That doctrine stands for the principle that federal district courts lack jurisdiction over de facto appeals from state court judgments. *Carmona v. Carmona*, 603 F.3d 1041, 1050 (9th Cir. 2010). A de facto appeal exists where a "federal plaintiff asserts as a legal wrong an allegedly erroneous decision by a state court, and seeks relief from a state court judgment based on that decision." *Id.* (internal quotations and citation omitted.) In other words, for *Rooker-Feldman* to apply, the harm alleged must result from the state court proceeding; it does not bar an action to redress harm caused by an adverse party. *Id.*

Absent any response by Myers, Judge Lynch entered his Findings and Recommendations on July 18, 2018, concluding the *Rooker-Feldman* doctrine is inapplicable because Myers attributes his legal injuries to Judge Langton—not the Montana Supreme Court or its disciplinary decisions—and recommended that Judge Langton's Motion to Dismiss be denied.

7

Myers did not object to Judge Lynch's Findings and Recommendation on Judge Langton's Motion to Dismiss. Therefore, the Court reviews those findings and recommendations for clear error. Finding none, the Court agrees with Judge Lynch that Judge Langton's Motion to Dismiss should be denied.

## II.    Judge Langton's Motion for Summary Judgment

Judge Langton moved for summary judgment on all six counts of the Complaint, arguing that Counts I and II (conspiracy to fabricate evidence), III (First Amendment retaliation), and VI (attorney deceit), are barred by the doctrine of collateral estoppel. Judge Langton further asserted that he is entitled to summary judgment on Counts IV (defamation and defamation per se) and V (abuse of process) as a matter of law.

Myers failed to file a response brief, and Judge Lynch entered his Findings and Recommendation, concluding that the doctrine of collateral estoppel bars Counts I, II, III, and VI. As to Counts IV and V, Judge Lynch determine that Myers failed to present any evidence raising a genuine dispute of material fact, entitling Judge Langton to summary judgment as a matter of law on those counts. Myers disputes these findings in his Objections, which are laid out in more detail below.

In a motion for summary judgment, the moving party is entitled to summary judgment upon a showing "that there is no genuine dispute as to any material fact

and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In evaluating a motion for summary judgment, a court must construe the evidence in the light most favorable to the non-moving party and draw all justifiable inferences in the non-moving party's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Betz v. Trainer Wortham & Co., Inc.*, 504 F.3d 1017, 1020–21 (9th Cir. 2007). Once the moving-party has met its burden, the non-moving party must demonstrate "specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Cattrett*, 477 U.S. 317, 324 (1986). To do this, the non-moving party must look beyond the pleadings to affidavits, depositions, answers to interrogatories, or admissions for this evidence. *Id.*

Where, as here, the non-moving party fails to respond to a summary judgment motion, the moving party still bears the burden of demonstrating it is entitled to judgment as a matter of law. *Cristobal v. Siegel*, 26 F.3d 1488, 1495 n.4 (9th Cir. 1994). The Court must carefully evaluate whether genuine issues of material facts exist which would preclude summary judgment. *Id.* If the movant's papers do not reveal a genuine issue of material fact and are sufficient to warrant summary judgment, the court can grant an unopposed summary judgment motion. *United States v. Real Property Located at Incline Village*, 47 F.3d 1511, 1520 (9th Cir. 1995), *rev'd on other grounds sub nom. Degen v. United States*, 517 U.S. 820 (1996).

In light of Myers' objections (Doc. 43), the Court reviews Judge Lynch's pertinent Findings and Recommendation de novo. The Court agrees with Judge Lynch that Judge Langton is entitled to summary judgment on all counts in the Complaint.

## A. Collateral Estoppel

"Under collateral estoppel, once a court has decided an issue of fact or law necessary to its judgment, that decision may preclude relitigation of the issue in a suit on a different cause of action involving a party to the first case." *Allen v. McCurry*, 449 U.S. 90, 94 (1980) (citation omitted). The doctrine of collateral estoppel aims to "relieve parties of the cost and vexation of multiple lawsuits, conserve judicial resources, and, by preventing inconsistent decisions, encourage reliance on adjudication." *Id.* Collateral estoppel is an affirmative defense that must be plead. *Blonder-Tongue Las. v. University of Illinois Foundation*, 402, U.S. 313, 350 (1971). Federal courts apply the law of collateral estoppel of the state from which the subject judgment emerged. *Kremer v. Chemical Construction Corp.*, 456, U.S. 461, 482 (1982).

Under Montana law, the doctrine of collateral estoppel bars the re-litigation of issues that have been litigated and resolved in a prior suit. *Baltrusch v. Baltrusch*, 130 P.3d 1267, 1273 (Mont. 2006); *Kullick v. Skyline Homeowners Ass'n*, 69 P.3d 225, 229 (Mont. 2003). Courts apply a four-part test to determine

whether a particular issue is collaterally estopped, requiring the party asserting

collateral estoppel to prove each of the following elements: (1) the issue decided in

the prior adjudication was identical to the issue raised in the action in question; (2)

there was a final judgment on the merits in the prior adjudication; (3) the party

against whom preclusion is now asserted was a party or in privity with a party to

the prior adjudication; and (4) the party against whom preclusion is now asserted

was afforded a full and fair opportunity to litigate the issue which may be barred.

*McDaniel v. State*, 208 P.3d 817, 825–26 (Mont. 2009) (citing *Baltrusch*, 130 P.3d

at 1274).

    As Myers points out in his objections, the Montana Supreme Court reframed

this test in *State v. Huffine*, 422 P.3d 102, 108 (Mont. 2018), one day before Judge

Lynch issued his Findings and Recommendation in the instant matter. Under

*Huffine*, collateral estoppel applies when: (1) both proceedings involved the same

parties or their privies; (2) the same issue was disputed and conclusively decided

on the merits in the prior litigation; (3) the prior proceeding afforded the party or

privy against whom estoppel is asserted a full and fair opportunity to litigate the

issue; and (4) the prior proceeding resulted in a final judgment. *Id.*

Judge Lynch concluded that Myers is collaterally estopped from bringing

Counts I, II, III, and VI against Judge Langton because all the elements of

collateral estoppel are satisfied: Myers was a party to the underlying proceedings;

11

he had a full and fair opportunity to participate in those proceedings; the issues

raised in the Complaint—whether Langton presented false or fabricated evidence

and testimony to the Commission and retaliated against Myers for exercising his

free speech rights—were definitively resolved by the Commission and the

Montana Supreme Court; and the Commission and Montana Supreme Court

proceedings resulted in a final judgment, namely Myers' sanction, suspension, and

ultimate disbarment. (Doc. 43 at 18.) Myers objects, claiming that two of the

elements of collateral estoppel have not been satisfied. The Court disagrees.

### i.     Identical Issues (Second *Huffine* Element)

First, Myers argues that the issues resolved by the Commission and the

Montana Supreme Court are not identical to the issues he raises in his complaint in

the subject matter. "To determine whether the issues decided in the prior

adjudication are identical to those presented in the present case, [the court]

compares the pleadings, evidence and circumstances surrounding the two actions."

*Baltrusch*, 130 P.3d at 1267. The question is not whether an issue equates with

elements of a cause of action; rather, the bar "extends to all questions essential to

the judgment and actively determined by a prior valid judgment." *Id.* Collateral

estoppel further precludes re-litigation of determinative facts which were actually

or necessarily decided in a prior action. *Id.* Furthermore, although "[t]he mere fact

that two cases arise from the same transaction does not necessarily mean that each

involve identical issues[,]" collateral estoppel applies to issues that are "so intertwined that to decide the issue before it, the [District] Court would have to rehear the precise issue previously decided." *Id.* at 1277.

Counts I, II, and VI assert that Judge Langton presented false and fabricated evidence and testimony to the Commission during the disciplinary hearings initiated by the ODC. In Montana Supreme Court Cause Number, PR 16-0245, the Commission affirmed each of Judge Langton's factual findings regarding Myers' conduct in the *Cox* matter. (Doc. 22-7 at 5.) The Commission noted that Myers' conduct was "outrageous, continuous, and display[ed] a disturbing lack of judgment and disrespect for the judiciary . . . and the rule of law as a whole." (*Id.*) And in Montana Supreme Court Cause Number PR 16-0411, the Commission found, among other things, that: "Judge Langton had no *ex parte* contact with opposing counsel in the Cox matter"; "Judge Langton did not commit fraud on the court or otherwise engage in corruption"; "Judge Langton did not retaliate against" Myers; and that Myers' "advertisement and his statement to the newspaper were knowingly false or made with reckless disregard for the truth." (Doc. 22-11 at 3–4.) The Commission determined that it was Myers, and not Judge Langton, who engaged in conduct involving dishonesty, fraud, deceit, or misrepresentation. (*Id.* at 4.) The Court therefore agrees with Judge Lynch that Myers is collaterally estopped from bringing Counts I, II, and VI.

The Court also agrees with Judge Lynch that Count III is barred by collateral estoppel. In Count III, Myers alleges that Judge Langton retaliated against Myers' exercise of his free speech rights in violation of the First Amendment. In Montana Supreme Court Cause Number PR 17-0026, the Commission determined, however, that none of the statements at issue—the radio advertisements, written statement to the *Ravalli Republic*, and campaign mailers—enjoy First Amendment protection. (Docs. 22-11 at 7; 22-20 at 8.)

Looking back at the issues decided by the Commission and the Montana Supreme Court, this Court agrees with Judge Lynch that the issues contained in Counts I, II, III, and VI are sufficiently "intertwined" with the issues raised and finally adjudicated by the Commission and the Montana Supreme Court in the three underlying disciplinary proceedings as to warrant preclusion under collateral estoppel, notwithstanding Myers' objection to the contrary. Further consideration of these counts would amount to re-litigation of determinative facts previously resolved by the Commission, and adopted by the Montana Supreme Court. (*See* Docs. 22-9 at 2; 22-15 at 2; 22-22 at 2.) Indeed, as Judge Lynch noted, Counts I, II, III, and VI advance precisely the type of claims the doctrine of collateral estoppel is designed to prevent.

### ii.     Privity (First *Huffine* Element)

Next, Myers contends that Judge Lynch applied an outmoded test for

collateral estoppel, overlooking the Montana Supreme Court's recent decision in

*State v. Huffine.* Specifically, Myers argues that under *Huffine*, collateral estoppel

now requires mutual privity, and because Judge Langton was not a party or privy

in the underlying disciplinary proceedings, he is not bound by those decisions and

cannot assert collateral estoppel. The Court finds this argument unpersuasive.

To start, it is not clear from *Huffine* that Montana law now requires mutual

privity in order to successfully raise a defense of collateral estoppel. In framing

the collateral estoppel elements in *Baltrusch*, the Montana Supreme Court relied on

the 1942 California Supreme Court decision in *Bernhard v. Bank of America Nat'l*

*Trust & Savings Ass'n*, 122 P.2d 892 (Cal. 1942). There, addressing mutual privity

under the related doctrine of res judicata, the California Supreme Court stated:

> There is no compelling reason . . . for requiring that the party
> asserting the plea of res judicata must have been a party, or in privity
> with a party, to the earlier litigation. No satisfactory rationalization
> has been advanced for the requirement of mutuality. Just why a party
> who was not bound by a previous action should be precluded from
> asserting it as res judicata against a party who was bound by it is
> difficult to comprehend.     Many courts have abandoned the
> requirement of mutuality and confined the requirement of privity to
> the party against whom the plea of res judicata is asserted.

*Id.* at 894. "Collateral estoppel is a form of res judicata." *Kullick*, 69 P.3d at 229.

And, although *Bernhard* addressed res judicata, which differs from collateral

estoppel in that it bars re-litigation of claims in subsequent proceedings based on the same cause of action rather than the same issues, forms the basis for the Montana Supreme Court's rulings on the doctrine of collateral estoppel. *See Baltrusch*, 130 P.3d at 1274.

Furthermore, the Court in *Huffine* relies on *Baltrusch* and *Kullick*—neither of which requires mutuality—for the elements of collateral estoppel. The Court then cites to *Bernhard* and its own decision in *Denturist Ass'n of Montana v. State*, 372 P.3d 466 (Mont. 2016), for the proposition that, "some courts have recognized that the original common law requirement for mutuality of parties or privies has evolved to require only that the party asserted to be estopped have been a party or privy to the prior judgment." *Huffine*, 422 P.3d at 108 n.4. Therefore, although *Huffine* reframes the elements of collateral estoppel, the Montana Supreme Court's discussion of privity in its prior collateral estoppel decisions and *Huffine* itself suggests that mutuality is not required. The Court is convinced that the Montana Supreme Court did not change the elements of collateral estoppel to require mutual privity in direct contradiction to its longstanding precedent as suggested by Myers. *See*, e.g., *Denturist Ass'n*, 372 P.3d at 469 (requiring only that "the party against whom collateral estoppel is now asserted was a party or in privity with a party to the prior adjudication."); *McDaniel*, 208 P.3d at 826 (same); *Baltrusch*, 130 P.3d at 1274 (same); *Kullick*, 69 P.3d at 229 (same); *Rausch v. Hogan*, 28 P.3d 460, 463

(Mont. 2001) (same); *Finstad v. W.R. Grace & Co.-Conn.*, 8 P.3d 778, 783 (Mont. 2000) (same); *Haines Pipeline Construction v. Montana Power Co.*, 876 P.2d 632, 636 (Mont. 1994) (same). *Huffine* stands for the proposition that the civil common law doctrine of issue preclusion does not apply to establish an essential element of a criminal offense, nothing more. *Huffine*, 422 P.3d at 111 ("We . . . hold that res judicata, in the form of collateral estoppel, does not apply in a criminal case to conclusively establish, or preclude contest of, proof of an essential element of a charged offense."). In this regard, because Myers is the party against whom collateral estoppel is being asserted, and because he is bound by the prior proceedings, he is barred from re-litigating Counts I, II, III, and VI. Judge Langton need not have been a party or privy to the prior proceedings to assert the defense of collateral estoppel.

But, even assuming that *Huffine* requires Judge Langton to have been a party or privy in the underlying proceedings, Judge Langton has established that he was. There are four underlying proceedings at issue. The first arose out of the *Cox* matter, discussed above. There, Judge Langton, acting in his official capacity, imposed sanctions on Myers. Myers appealed Judge Langton's sanctions decision to the Montana Supreme Court in *In re Marriage of Cox*, and the Court affirmed. Judge Langton was a party to this matter, as evidenced by the full name of the

17

case, which lists the appellee as *Twenty-First Judicial District of Montana, Department One, Hon. Jeffrey H. Langton.*

Judge Langton was in privity with the State of Montana in the three disciplinary proceedings as well. "The concept of privity in the context of a judgment 'applies to one whose interest has been legally represented at trial.'" *Denturist Ass'n*, 372 P.3d at 469 (citation omitted). "[A] nonparty may be bound by a judgment because she was adequately represented by someone with the same interests who [wa]s a party to the suit." *Id.* (Internal quotation marks and citation omitted). In *Denturist Ass'n*, the Court explained that "[p]rivity exists where two parties are so closely aligned in interest that one is the virtual representative of the other." *Id.*

Judge Langton was in privity with the State of Montana in each of the three disciplinary proceedings heard by the Commission and finally resolved by the Court. Montana Supreme Court Cause Number PR 16-0245 arose out of Myers' handling of post-trial motions and an appeal in the *Cox* matter. The Commission found—and the Montana Supreme Court agreed—that Myers' conduct displayed a "disturbing lack of judgment and disrespect for the judiciary," referring to Judge Langton. Montana Supreme Court Cause Numbers PR 16-0411 and PR 17-0028 stemmed from Myers' conduct during his 2016 judicial campaign against Judge Langton. Specifically, the disciplinary actions centered around statements he made

in campaign advertisements about Judge Langton. The Court adopted the Commission's recommendations that Myers be suspended and disbarred, in part because Myers "made statements that he knew to be false or made with reckless disregard for the truth concerning the integrity of a judge." (Docs. 22-15 at 1; 22-22 at 1.) Based on the foregoing, this Court is satisfied that Judge Langton and the State of Montana were "so closely aligned in interest" that Judge Langton was in privity with the State of Montana in the underlying proceedings for the purposes of collateral estoppel. Judge Langton is therefore entitled to assert the affirmative defense of collateral estoppel.

### iii. Remaining Collateral Estoppel Elements

Judge Lynch concluded—and Myers does not object—that the remaining two elements of collateral estoppel have been met. Reviewing for clear error, this Court agrees. First, Myers was a party to the underlying disciplinary proceedings and had a full and fair opportunity to participate in those proceedings. In the *Cox* matter, Judge Langton held a show cause hearing, at which Myers appeared with counsel, before imposing sanctions on Myers. (*See* Doc. 22-7 at 3.) Myers appeared *pro se* at two of the three disciplinary hearings before the Commission. (*See* Docs. 22-11 at 1; 22-20 at 1.) He also filed Answers to the ODC complaints in those proceedings. (*See* Docs. 22-11 at 6; 22-20 at 5.) Without providing an explanation, Myers was absent from the third disciplinary hearing before the

19

Commission, which took place on the same morning and in the same location as the other two hearings. (Doc. 22-7 at 1.) The record indicates that he filed a number of motions prior to that hearing, all of which were untimely and therefore denied by the Commission. (*Id.* at n.2.)

The last element of collateral estoppel is also satisfied because the three disciplinary decisions against Myers are final. "[I]t is appropriate to accord finality to an earlier judgment which contains findings of fact that definitively resolve all of the new allegations and legal theories included in the later complaint." *Baltrusch*, 130 P.3d at 1276. Article VII, Section 2(3) of the Montana Constitution vests the Montana Supreme Court with original and exclusive jurisdiction in all matters involving the conduct and discipline of lawyers admitted to practice law in Montana. *Billings Gazette v. State*, 190 P.3d 1126, 1129 (Mont. 2008); *see also* Mont. Code Ann. § 37-61-301; Montana Rule for Lawyer Disciplinary Enforcement 7A. The Montana Supreme Court adopted the Commission's Findings of Fact, Conclusions of Law, and Recommendations in each of the three disciplinary proceedings. As discussed above, those findings definitively resolve the allegations in Myers' Complaint in this matter.

In sum, the Court agrees with Judge Lynch's conclusion that Judge Langton is authorized to assert the affirmative defense of collateral estoppel, and that this

defense precludes Meyers' claims in Counts I, II, III, and IV, and therefore, Judge
Langton is entitled to summary judgment on those counts.

## B. Defamation and Defamation Per Se

This Court similarly finds that Judge Langton is entitled to summary
judgment on Myers' allegations of defamation and defamation per se contained in
Count IV. The Complaint identifies six allegedly defamatory statements made by
Judge Langton. (*See* Doc. 5.) Judge Lynch addressed each of the statements in
his Findings and Recommendation, concluding that none met the stringent standard
for defamation. (Doc. 43 at 20–23.) Myers specifically objected to three of these
findings.

Under Montana law, a successful defamation claim requires a showing that
the published statements at issue are false, not privileged, and defamatory. Mont.
Code Ann. §§ 27-1-802–03. A statement is defamatory if it "exposes the person to
hatred, contempt, ridicule, or obloquy, or causes a person to be shunned or
avoided, or has a tendency to injure the person in his or her occupation." *Id.*; *see
also Lee v. Traxler*, 384 P.3d 82, 86 (Mont. 2016). "It is not sufficient, standing
alone, that the language at issue is unpleasant, annoying, or irksome, or that it
subjects someone to jests or banter, so as to affect his feelings." *McConkey v.
Flathead Electric Cooperative*, 125 P.3d 1121, 1130 (Mont. 2005). Moreover,

where an opinion discloses the facts upon which it is formed, the opinion does not carry defamatory meaning. *Id.* at 1130–31.

### i. Statement One

The first statement at issue is Judge Langton's judicial campaign advertisement that charged Myers with making "false, baseless, and inflammatory comments against the opposing party, her attorney, an expert witness, and me" in the *Cox* matter ("Statement One"). Judge Lynch determined that this statement constituted an opinion which discloses the facts upon which it was formed. (Doc. 43 at 21.) Myers objects that Statement One is capable of "being proven true or false" and is therefore actionable. (Doc. 44 at 16.) Presuming that Myers is attempting to argue that Statement One could be proven false, he has failed to provide legal argument or supporting evidence. To defeat a summary judgment motion, the non-moving party "may not rest upon the mere allegations or denials of his pleading"; rather, he must "set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 248. Myers has failed to meet this burden. Consequently, the Court agrees with Judge Lynch that the undisputed facts show that Statement One constituted Judge Langton's opinion and disclosed the facts upon which it was formed.

Myers advances a second, more bizarre objection to Judge Lynch's finding as to Statement One: that the finding is based on inadmissible hearsay, namely, the

Montana Supreme Court's decision affirming Judge Langton's imposition of sanctions. (Doc. 44 at 16–17.) The argument is ill-founded.

Hearsay is an out-of-court statement offered into evidence to prove the truth of the matter asserted in that statement. Fed. Rule Evid. 801(c). In *United States v. Sine*, 493 F.3d 1021, 1036 (9th Cir. 2007) (citations omitted), the Ninth Circuit has previously held that "[a] court judgment is hearsay 'to the extent that it is offered to prove the truth of the matters asserted in the judgment.'" In that case, a Utah lawyer, Sine, helped execute a pyramid scheme. *Id.* at 1023. When the scheme began to unravel, Sine filed a number of lawsuits in an attempt to establish that he was a victim of the scheme. *Id.* The federal district court judge presiding over one of the suits entered findings in which he denounced Sine's ploy as "chicanery, mendacity, deceit, and pretense." *Id.* at 1024. In Sine's subsequent federal criminal prosecution, the government repeatedly referenced the earlier findings to prove the truth of the matter asserted by the judge—that Sine had acted with mendacity and deceit—rendering them inadmissible. *Id.* at 1036. Here, in contrast, the Montana Supreme Court disciplinary decisions are not being used to prove the truth of the matters asserted in those judgments—that Myers violated numerous Rules of Professional Conduct and provisions of the Montana Code of Judicial Conduct, acted dishonestly, and cloaked his misconduct as protected speech. Rather, Judge Lynch used them to show only that Judge Langton's

23

statement was an opinion that disclosed the facts supporting it, "i.e. the fact that the Montana Supreme Court agreed that Myers' comments were false, baseless, and inflammatory serves as a basis for Langton's opinion on the same matter." (Doc. 43 at 21) (citing *Myers v. Twenty-First Judicial District of Montana*, 2015 WL 2447230, at *2). In this light, the Montana Supreme Court decision is used only to show the absence of a genuine dispute of material fact to support Myers' claim that Langton is liable for defamation or defamation per se.

Moreover, although these facts are corroborated by the Montana Supreme Court decision, there exists an independent source for them in Judge Langton's personal account of these incidents. As Judge Langton indicates in his response brief, his campaign advertisement itself disclosed the facts upon which his opinion was based: that he sanctioned Myers, the sanction was upheld on appeal, and it prompted the ODC to file a disciplinary action against Myers. (Doc. 45 at 20.) These facts did not come from an inadmissible court order, as Myers alleges.

## ii.    Statement Two

The second statement at issue is Judge Langton's assertion that Myers' judicial campaign "featured a false summary" of the civil case in which Judge Langton sanctioned Myers ("Statement Two"). Judge Lynch concluded that Statement Two does not constitute defamation because the undisputed evidence shows that it did not disgrace or degrade Myers, subject him to hatred or ridicule,

cause him to be shunned or avoided, or directly cause injury to his occupation. (Doc. 43 at 21.)  By failing to file a response to Judge Langton's summary judgment motion, Myers missed his opportunity to present evidence raising a genuine issue of material fact suggesting the contrary.  Myers now objects that the statement is actionable as defamation per se, (Doc. 44 at 17), but fails to supply any evidence, legal argument, or traceable legal authority to support this assertion. "A party makes a proper objection by identifying the parts of the magistrate's disposition that the party finds objectionable and presenting legal argument and supporting authority, such that the district court is able to identify the issues and the reasons supporting a contrary result." *Montana Shooting Sports Ass'n v. Holder*, 2010 WL 4102940, at *2 (D. Mont. 2010) (citation omitted).  In the absence of a sufficient objection, the Court reviews Judge Lynch's findings as to Statement Two for clear error and finds none.  Therefore, the Court agrees with Judge Lynch that Myers has failed to raise a genuine issue of material fact as to the defamatory nature of Statement Two.

### iii.    Statement Three

Myers' third objection regarding Count IV concerns a campaign advertisement in which Judge Langton accused Myers of making "reckless allegations of corruption against county employees" and costing "taxpayers a great deal of money." (*See* Doc. 44 at 17.)  As Judge Lynch explains, Myers failed to

respond to Judge Langton's summary judgment motion and, in so doing, has failed to present any evidence supporting his claim that the statement is defamatory in nature. (Doc. 43 at 22.) Myers' objection on this point is largely unintelligible. He focuses on what Judge Langton meant by the word "reckless" and asserts that "[t]his is actionable as defamation per se. Manly, Id., Cooper, Id." (Doc. 44 at 18.) Myers provides no traceable authority to support this bald assertion. Due to the incoherence of the argument and the lack of supporting authority, this Court is unable to identify the issues and the reasons supporting a result contrary to Judge Lynch's finding that Statement Three does not constitute defamation per se.

Thus, the Court overrules Myers' specific objections to the Findings and Recommendation as to Count IV. Furthermore, because Myers did not object to Judge Lynch's analysis of the other three allegedly defamatory statements identified in the Complaint, and because this Court finds no clear error in Judge Lynch's analysis of those statements, the Court agrees with Judge Lynch that summary judgment should be granted in favor of Judge Langton on Myers' defamation and defamation per se claims.

## C. Abuse of Process

Myers has failed to raise any objections to Judge Lynch's recommendation that summary judgment be granted to Judge Langton on Myers' abuse of process claim contained in Count V of the Complaint. Accordingly, the Court reviews

Judge Lynch's pertinent findings and recommendations for clear error. This Court finds no clear error in Judge Lynch's conclusion that Myers has not presented any evidentiary material to dispute Judge Langton's claim that he never invoked a process in a court of law to pursue criminal defamation charges against Myers. Consequently, the Court agrees with Judge Lynch's recommendation that Judge Langton is entitled to summary judgment on Myers' abuse of process claim.

## III.    The ODC Defendants

As a preliminary matter, this Court will address the ODC Defendants' argument that the *Rooker-Feldman* doctrine bars this action. As Judge Lynch explained in his Findings and Recommendation, the ODC Defendants' *Rooker-Feldman* argument is identical to Langton's, and their summary judgment motion should be denied on that ground. As with Langton, Myers directs his claims at the individual defendants, not the Montana Supreme Court. Myers raised no objection to this finding. The Court therefore reviews it for clear error and finds none.

### A. First Amendment Claim (Count III)

Judge Lynch determined that Myers' First Amendment retaliation claim against the ODC Defendants fails for the same reasons that his claim against Judge Langton failed, namely that the Montana Supreme Court has already determined that Myers' conduct did not enjoy First Amendment protection. Consequently, Judge Lynch concluded that Myers is collaterally estopped from asserting Count

III against the ODC defendants. In his Objections, Myers contends that Defendants, including the ODC Defendants, were not parties or privies to the underlying disciplinary proceedings. (Doc. 44 at 12.) Again, the Court does not agree that the Montana Supreme Court impliedly overruled decades of precedent in *Huffine* to require mutual privity. Therefore, Myers' objection is overruled and he is collaterally estopped from bringing Count III against the ODC Defendants.

## B. Conspiracy Claims Against the ODC Defendants

Despite the ODC Defendants' assertion that collateral estoppel applies to these claims, Judge Lynch addressed the merits of ODC Defendants' arguments. First, Judge Lynch recommended that the ODC Defendants are entitled to summary judgment on Myers' conspiracy claims because Myers has failed to establish a viable conspiracy claim under 42 U.S.C. § 1983. (Doc. 43 at 25.) Myers objects by challenging the admissibility of the Declaration by Defendant Moog stating that there was no collusion or agreement to deprive Myers of his rights, and argues that the ODC Defendants "haven't provided any admissible evidence to challenge the factual assertions of the Plaintiff." (Doc. 44 at 8.) However, it was Myers' failure to present evidence to support his conspiracy claims that was fatal to those claims, not Moog's Declaration. And, again, Myers provides no evidence of a conspiracy in his objections to Judge Lynch's Findings and Recommendation. The admissibility of Defendant Moog's Declaration has no

bearing on Myers' failure to present a prima facie conspiracy claim in his complaint or specific facts showing there is a genuine issue for trial.

Judge Lynch further concluded that Moog, McGuyer, and Smith enjoy immunity from liability under Counts I, II, and VI. (Doc. 43 at 26.) Specifically, Moog enjoys quasi-judicial immunity for his role in prosecuting the ODC complaints against Myers, while McGuyer and Smith enjoy immunity for their roles as witnesses at the disciplinary hearings before the Commission. (*Id.* at 27.) Myers objects by challenging the constitutionality of the Montana Rules of Lawyer Disciplinary Enforcement ("MRLDE") that establish such immunity. (Doc. 44 at 9–11.) As the ODC Defendants point out, however, the Court should avoid unnecessary constitutional questions. *Camreta v. Greene*, 563 U.S. 692, 705 (2011); *Lair v. Murry*, 871 F. Supp. 2d 1058, 1066 (D. Mont. 2012). Because this issue is resolved on other grounds, the Court declines to address the constitutionality of the challenged MRLDE.

As Judge Lynch concluded, Myers has failed to present any evidence in opposition to the ODC Defendants' summary judgment motion that raises a genuine issue of material fact that a conspiracy existed. Myers contends that he laid out such evidence in detail in his Complaint. (Doc. 44 at 8.) But "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is

that there be no *genuine* issue of *material* fact." *Anderson*, 477 U.S. at 247–48.

Nothing in the Complaint presents a "genuine" issue of material fact that the ODC

Defendants conspired against Myers. The Complaint contains uncorroborated

allegations, which are insufficient to withstand summary judgment.

Myers further asserts that "[c]onspiracy or direct evidence of improper

motive or agreement among the parties to violate a plaintiff's constitutional rights

will only rarely be available." (Doc. 44 at 8.) Presumably, according to Myers,

this Court should "infer such agreements." (*Id.*) Myers offers no authority to

support this proposition, which is contrary to the standard necessary to defeat

summary judgment. Therefore, this Court agrees with Judge Lynch that the ODC

Defendants are entitled to summary judgment on Counts I, II, and VI.

## C. **Supplemental Jurisdiction**

Finally, Myers did not object to Judge Lynch's recommendation that the

Court decline supplemental jurisdiction over Myers' purported state law claims.

Reviewing Judge Lynch's findings for clear error and finding none, the Court

adopts the recommendation that Myers' state law claims be dismissed.

Accordingly, IT IS ORDERED that Judge Lynch's Findings and Recommendation (Doc. 43) is ADOPTED IN FULL.

IT IS FURTHER ORDERED that Judge Langton's Motion to Dismiss (Doc. 20) is DENIED.

IT IS FURTHER ORDERED that Defendants' motions for summary judgment (Docs. 23; 25) are GRANTED and this action is DISMISSED.

DATED this $\underline{13^{th}}$ day of December, 2018.

Dana L. Christensen, Chief Judge
United States District Court